**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MELISSA KENNELLY,

Plaintiff,

vs. Case No. 1:25-cv-00859-DHU-SCY

NEW MEXICO JUDICIAL STANDARDS COMMISSION,

Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction ("Motion"). Doc. 20. The Motion is fully briefed. After carefully considering Plaintiff's Motion, the attendant briefs, the law, and being fully advised of the premises, the Court concludes that the Motion will be **GRANTED.**

## I.
## BACKGROUND

In this case, Plaintiff Melissa Kennelly alleges that Defendant the New Mexico Judicial Standards Commission ("JSC") is violating her First Amendment rights by prohibiting her from speaking publicly about disciplinary proceedings that Defendant initiated against her while she was a sitting judge. Doc. 1. After Plaintiff retired, the JSC abated the proceedings against her but threatened Plaintiff with contempt if she ever speaks about them. *Id.* Plaintiff attests that Defendant's restrictions on her speech prevent her from publicly defending herself or criticizing the manner in which Defendant conducted the proceedings. Docs. 1, 20, 20-3, 28. In her complaint, Plaintiff seeks (1) a declaratory judgment that Defendant's speech restrictions are unconstitutional

and (2) a permanent injunction prohibiting Defendant from punishing her for engaging in the restricted speech. Doc. 1 at 31-32.

Defendant imposed the speech restrictions Plaintiff challenges by way of JSC Rule 6 ("Rule 6") and the Order of Abatement ("Order") abating the disciplinary proceedings against her. Rule 6 provides that all proceedings before the JSC and all filings and testimony in such proceedings "are confidential," except for "[a] record of proceedings filed by the [JSC] with the Supreme Court" in the event that the JSC holds a merits hearing and recommends "the discipline, removal, or retirement of a judge." JSC Rules 6(A), 36(A), 37(A), (B), (D). Nevertheless, Rule 6 includes several exceptions. Most significantly here, the rule allows third-party complainants to "communicat[e] to others about the filing of the third-party complaint," "its contents," and the "complainant's testimony related thereto." JSC Rule 6(C). In addition, Rule 6 allows the JSC to "disclose otherwise confidential information to … others" for good cause. JSC Rule 6(F). Rule 6 does not include any comparable exceptions for respondent judges.[1] *See generally id.*

The Order, in turn, abated the disciplinary proceedings then pending against Plaintiff but states that the JSC retains jurisdiction over these proceedings and will reopen them if Plaintiff ever becomes a judge in New Mexico again. Doc. 1-2. The Order further states that "[a]ll matters" in

[1] Rule 6 does allow a respondent judge to "waive confidentiality regarding the judge's disciplinary history" if she is "applying for a position that requires a background check," whereupon the JSC will certify that the judge does or does not have a disciplinary history and, if she does, will refer "the background investigators" to "the public portion of the record" before the New Mexico Supreme Court. JSC Rule 6(E). Rule 6 also allows all parties to disclose confidential information to support staff, and to disclose to third parties the existence of a notice of investigation or formal proceedings "to the extent necessary to conduct the investigation." JSC Rule 6(D), (G). However, JSC Rule 11 provides that "a judge" may be found in contempt and disciplined if she intentionally discloses to a third party "the existence of a [JSC] proceeding, … any allegation against a judge, or … information obtained in an investigation against a judge beyond the extent necessary for the judge to conduct an investigation." JSC Rule 11(A)(6), (B).

the abated proceedings "remain confidential," "the mandate to maintain strict confidentiality is applicable to [Plaintiff] and the [JSC]," and "breaches of confidentiality by [Plaintiff] regarding [JSC] processes in the [abated proceedings] may be considered a failure to obey a [JSC] order, failure to follow a [JSC] rule, or obstruction of any lawful process of the [JSC] pursuant to [JSC] Rule 10."[2] *Id.* at 1.

Plaintiff filed her Motion for Preliminary Injunction, requesting that the Court declare that Defendant's Order confidentiality rules "unlawfully restrain Plaintiff's right to free speech under the First Amendment to the United States Constitution and enjoining JSC from pursuing contempt proceedings, further discipline, punishment, or any other retaliation against Plaintiff if she engages in any speech protected by the First Amendment." Doc. 20 at 1.

## II.
## LEGAL STANDARD

"To succeed on a typical preliminary-injunction motion, the moving party needs to prove four things: (1) that she's substantially likely to succeed on the merits, (2) that she'll suffer irreparable injury if the court denies the injunction, (3) that her threatened injury (without the injunction) outweighs the opposing party's under the injunction, and (4) that the injunction isn't adverse to the public interest." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019) (quotation marks omitted). "When a movant establishes the first prong of a preliminary injunction based on a First Amendment claim, the remaining prongs generally also weigh in his favor." *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1254 (10th Cir. 2024).

[2] JSC Rule 10 describes the circumstances in which the JSC may make a finding of contempt against "[a]ny person, including a judge," and may recommend sanctions to the New Mexico Supreme Court. JSC Rule 10.

A preliminary injunction is "disfavored" if "(1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Free the Nipple-Fort Collins*, 916 F.3d at 797. To get a disfavored preliminary injunction, "the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: She must make a 'strong showing' that these tilt in her favor." *Id.*

## III.
## DISCUSSION

In her Motion for Preliminary Injunction, Doc. 20, Plaintiff requests: "a preliminary injunction *declaring* that [Defendant's] Order of Abatement and confidentiality rules unlawfully restrain Plaintiff's right to free speech under the First Amendment to the United States Constitution *and enjoining* [Defendant] from pursuing contempt proceedings, further discipline, punishment, or any other retaliation against Plaintiff if she engages in any speech protected by the First Amendment." *Id.* at 1 (emphases added). She also requests attorney's fees under 42 U.S.C. § 1988. *Id.* at 23. As in initial matter, the preliminary injunction Plaintiff seeks is likely disfavored because it would change the status quo, *i.e.*, "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005). Rule 6 predated the at-issue disciplinary proceedings against Plaintiff and she does not appear to have contested the rule or its application to her until Defendant entered its Order.

However, for the following reasons, Plaintiff has established the four factors she must show to succeed on a motion for a preliminary injunction and has made a strong showing that the likelihood-of-success and balance-of-harm factors tilt in her favor.

**A. Likelihood of Success on the Merits.**

Plaintiff has made a strong showing that she is substantially likely to succeed on the merits of an as-applied First Amendment challenge to Rule 6 and the Order.[3]

**1. Read together, Rule 6 and the Order appear to operate as a content-based prior restraint of protected speech.**

"A law is content-based where it requires enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred." *Animal Legal Def. Fund v. Kelly*, 9 F.4th 1219, 1228 (10th Cir. 2021) (quotation marks and brackets omitted). Rule 6 and the Order are content-based because Defendant would have to examine the contents of Plaintiff's speech to determine whether she has violated the rule and order by disclosing confidential information about the disciplinary proceedings against her. Notably, Defendant admits that pursuant to the rule and order, Plaintiff cannot "divulge the specifics of the matters involving her." Doc. 33 at 4.

Other courts have found similar confidentiality restrictions to be content-based. *See, e.g., Kamasinski v. Jud. Rev. Council,* 44 F.3d 106, 109 (2d Cir. 1994) (judicial disciplinary proceedings); *Baugh v. Jud. Inquiry & Rev. Comm'n (JIRC)*, 907 F.2d 440, 444 (4th Cir. 1990) (judicial disciplinary proceedings); *Cox v. McLean*, 49 F. Supp. 3d 765, 770 (D. Mont. 2014) (judicial disciplinary proceedings); *Doe v. Supreme Ct. of Fla.*, 734 F. Supp. 981, 985 (S.D. Fla. 1990) (attorney disciplinary proceedings); *R.M. v. Supreme Ct.*, 883 A.2d 369, 377 (N.J. 2005) (attorney disciplinary proceedings).

---

[3] In her complaint, Plaintiff states that she challenges Defendant's speech restrictions "[a]s applied to her." Doc. 1 at 31-32. She does not claim that the restrictions are facially unconstitutional. *See generally id.*

Rule 6 and the Order also appear to operate as a prior restraint. "[A] 'prior restraint' restricts speech in advance on the basis of content." *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 42 (10th Cir. 2013). Rule 6 and the Order appear to restrict Plaintiff's speech in advance on the basis of content. With very limited exceptions, Rule 6 prohibits respondent judges from disclosing any information about JSC disciplinary proceedings, filings, and testimony. JSC Rule 6. The Order states that "breaches of confidentiality by [Plaintiff] regarding Commission processes in [the abated proceedings] may be considered a failure to obey a Commission order, failure to follow a Commission rule, or obstruction of any lawful process of the Commission pursuant to [JSC] Rule 10." Doc. 1-2 at 1. Rule 10 is entitled "Contempt" and provides that a respondent may be "cited for contempt" for failure to follow a JSC order or rule or for obstruction. JSC Rule 10(A). However, the JSC can only recommend sanctions, which must be imposed by the New Mexico Supreme Court. JSC Rule 10(D). The Order indicates that breaches of confidentiality "may," rather than "will," constitute failure to obey a JSC order or rule or obstruction of JSC processes. Doc. 1-2 at 1. However, the Order's (1) express reference to Rule 10's contempt provisions and (2) failure to specify any circumstances in which a breach would not be considered contempt, appear to operate as a threat that any breach of confidentiality can and likely will be treated as contempt, subject only to Defendant's discretion.

Moreover, Rule 6 and the Order encompass core political speech. "[S]peech critical of the exercise of the State's power," and speech "relating to alleged governmental misconduct" have "traditionally been recognized as lying at the core of the First Amendment." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1034–35 (1991) (Kennedy, J., concurring) (citing *Butterworth v. Smith*, 494 U.S. 624, 632 (1990)). Because Rule 6 and the Order appear to operate as a prior restraint, the Court cannot analyze specific speech to determine whether it is in fact core political speech.

However, Defendant admits that Plaintiff wants to, among other things, "criticiz[e] or comment[] on areas of the JSC process," which criticism would fall within the *Gentile/Butterworth* definition of core political speech. Doc. 33 at 3. Because Rule 6 and the Order appear to operate as a prior restraint, the Court cannot analyze specific speech to determine whether it falls into any disfavored categories of speech (e.g., obscenity, defamation, fighting words). *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 382–83 (1992). However, the Rule and order obviously encompass speech outside those categories. In sum, Rule 6 and the Order appear to operate as a content-based prior restraint of protected speech.

**2. The Applicable Constitutional Standard of Review is Strict Scrutiny.**

On the present record, the Court finds that strict scrutiny applies to Rule 6 and the Order as applied to Plaintiff. Strict scrutiny generally applies to content-based prior restraints on core political speech. *See, e.g., Chiles v. Salazar*, 607 U.S. —, 146 S. Ct. 1010, 1021 (2026) (content-based restrictions generally trigger strict scrutiny); *Verlo v. Martinez*, 820 F.3d 1113, 1134 (10th Cir. 2016) (content-based restrictions must satisfy strict scrutiny); *see also Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 558 (1976) ("Any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity.").

In other cases, courts have applied strict scrutiny to confidentiality rules restricting speech about judicial disciplinary proceedings. *See, e.g., Kamasinski*, 44 F.3d at 109; *Baugh*, 907 F.2d at 444–45; *Doe v. State of Fla. Jud. Qualifications Comm'n*, 748 F. Supp. 1520, 1525 (S.D. Fla. 1990). Defendant argues that a less demanding standard should apply because Plaintiff was a judge and is an attorney. *See, e.g.,* Doc. 23 at 10-11. The Court disagrees for the following reasons.

Some courts have applied *Pickering*-type balancing tests to content-based restrictions on a sitting judge's core political speech.[4] *See, e.g., Siefert v. Alexander*, 608 F.3d 974, 985 (7th Cir. 2010); *In re Cohen*, 349 A.3d 865, 885–87 (Pa. 2026); *In re Vincent*, 2007-NMSC-056, ¶ 8, 172 P.3d 605, 607; *Matter of Hey*, 452 S.E.2d 24, 30–31 (W. Va. 1994); *but see Jenevein v. Willing*, 493 F.3d 551, 557–58 (5th Cir. 2007) (declining to apply *Pickering*-type balancing test to "the free speech rights of employees elected to state office," including elected judges); *Miss. Comm'n on Jud. Performance v. Wilkerson*, 876 So. 2d 1006, 1013 (Miss. 2004) (applying strict scrutiny to restriction on sitting judge's speech).

These courts reason that a balancing test is appropriate because a judge's right to speak must be balanced against the state's need to regulate the judge's speech in order to preserve her ability to do her job and prevent her from abusing her prerogatives. *See, e.g., Siefert*, 608 F.3d at 984-85; *Hey*, 452 S.E.2d at 29–31. However, Plaintiff has retired from the bench, *i.e.*, she is no longer a sitting judge. As such, the rationale for applying a *Pickering*-type balancing test does not apply to her.[5]

---

[4] *See Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205,* 391 U.S. 563, 568 (1968) (when public employee challenges public employer's restriction of employee's speech based on First Amendment, courts must balance employee's interest "in commenting upon matters of public concern" with government's interest, "as an employer, in promoting the efficiency of the public services it performs through its employees"). Although Defendant disputes that the speech Plaintiff wants to engage in would address matters of public concern, at least some of it clearly would. *See, e.g., Pryor*, 99 F.4th at 1251-52 (speech intended to expose government wrongdoing is speech on a matter of public concern even if personal grievances partially motivate it).

[5] Other courts have applied various types of intermediate scrutiny to sitting judges' speech. *See, e.g., Matter of Disciplinary Proceeding Against Sanders*, 955 P.2d 369, 370 (Wash. 1998) ("clear and convincing evidence of speech … that casts doubt on a judge's integrity, independence, or impartiality" is required to justify restriction on judge's speech); *In re Inquiry of Broadbelt*, 683 A.2d 543, 552 (N.J. 1996) (*per curiam*) ("[T]he regulation of a judge's speech will be upheld if it furthers a substantial governmental interest unrelated to suppression of expression, and is no more restrictive than necessary."). However, like the courts that have applied a *Pickering*-type test, these courts deviate from strict scrutiny based on the state's need to regulate judges' speech in order to

The Supreme Court has held that states may regulate an attorney's core political speech (versus, *e.g.*, commercial speech) when the speech has a substantial likelihood of materially prejudicing a judicial proceeding in which the attorney represents a client. *Gentile*, 501 U.S. at 1074-75. But here, although Plaintiff is an attorney, she does not wish to speak as a client's legal representative, but rather as a concerned citizen and a person accused of professional misconduct. And in other cases, courts have applied strict scrutiny to restrictions on an attorney's core political speech as a person accused of professional misconduct. *See, e.g., In re Warner,* 21 So. 3d 218, 227-28 (La. 2009) (citing cases).[6]

**3. Application of Strict Scrutiny to Rule 6 and the Order**

For the following reasons, Rule 6 and the Order do not satisfy strict scrutiny as applied to Plaintiff in her present circumstances.[7] To satisfy strict scrutiny, a restriction on speech must be narrowly tailored to serve a compelling state interest. *See, e.g., Williams-Yulee v. Fla. Bar*, 575

---

preserve their ability to do their job and prevent them from abusing their prerogatives. And again, this rationale does not apply to Plaintiff, who is no longer a sitting judge.

[6] The *Warner* court acknowledged the Supreme Court's decision in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), in which the Court found a protective order to be constitutional because it "further[ed] an important or substantial governmental interest unrelated to the suppression of expression" and its restrictions were "no greater than is necessary or essential to the protection of the particular governmental interest involved." *Seattle Times*, 467 U.S. at 32 (brackets omitted). However, the *Warner* court found *Seattle Times* to be materially distinguishable because *Seattle Times* concerned the constitutionality of "the considered decision of a trial court based on good cause shown in a particular case and a protective order limited to information obtained through pretrial discovery," rather than "a rule which generally prohibits all participants in all attorney disciplinary proceedings from divulging any information regarding the attorney disciplinary proceedings in which they are involved." *Warner*, 21 So. 3d at 246-48 (quotation marks omitted). For the same reasons, *Seattle Times* is materially distinguishable from this case.

[7] For the same reasons, Rule 6 and the Order as applied to Plaintiff would likely not satisfy any of the various forms of intermediate scrutiny that courts have applied to restrictions on sitting judges' and attorneys' core political speech.

U.S. 433, 444 (2015); *Verlo*, 820 F.3d at 1134. "[A] content-based restriction is narrowly tailored only if it is the least restrictive means of achieving the government's compelling objective." *Verlo*, 820 F.3d at 1134; *see also Republican Party of Minnesota v. White*, 416 F.3d 738, 751 (8th Cir. 2005) ("A narrowly tailored regulation is one that actually advances the state's interest (is necessary), does not sweep too broadly (is not overinclusive), does not leave significant influences bearing on the interest unregulated (is not underinclusive), and could be replaced by no other regulation that could advance the interest as well with less infringement of speech (is the least-restrictive alternative).").

In its response to Plaintiff's Motion, Defendant alleges that Rule 6 and the Order are narrowly tailored to serve eight compelling state interests. Doc. 23 at 16-18. However, as explained below, not all the interests Defendant has identified are compelling, and Rule 6 and the Order are not narrowly tailored to serve those interests that are.

Defendant claims that a state constitutional amendment would be necessary to authorize any amendment to Rule 6 exempting judges from confidentiality requirements. *Id.* at 17. However, this appears to be incorrect—*i.e.*, a state constitutional amendment would not in fact be necessary—because Defendant has promulgated other exceptions to Rule 6 without such an amendment. *See, e.g.*, JSR Rule 6(C), (E), (F), (G).

Defendant claims that Rule 6 "preserves the reputation of everyone involved." Doc. 23 at 17. However, "injury to official reputation is an insufficient reason for repressing speech that would otherwise be free," and "the institutional reputation of the courts is entitled to no greater weight in the constitutional scales." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 841–42 (1978) (quotation marks and comma omitted).

Additionally, Rule 6 seems unlikely to preserve reputations because not only can the JSC "disclose otherwise confidential information" to "others" for "good cause," but also a third-party complainant is free to "communicat[e] to others about the filing of the third-party complaint, its contents, [and] complainant's testimony related thereto." JSC Rule 6(C), (F).

Defendant claims that Rule 6 protects complainants and witnesses from retaliation. Doc. 23 at 17. However, Rule 6 seems unlikely to prevent retaliation because the JSC must (i) disclose all potential witnesses to the respondent judge no later than when a notice of formal proceedings issues, and (ii) identify third-party complainants to the respondent "promptly after the [JSC's] investigative trial counsel determines that a third-party complainant may be called as a witness at a hearing on the merits." JSC Rule 17(A), (B)(1), (E). Also, Rule 6 is more restrictive than necessary to achieve this end because JSC Rule 11 already prohibits respondent judges from retaliating against known or suspected complainants and witnesses. JSC Rule 11(A)(5).

Defendant claims that Rule 6 encourages candid complaints and cooperation. Doc. 23 at 17. However, the rule is more restrictive than necessary to achieve this end, because it continues to operate after the investigative phase of disciplinary proceedings has ended and the JSC has already collected complainants' and witnesses' information. *See generally* JSC Rule 6.

Defendant claims that Rule 6 preserves the "integrity, impartiality, and independence of the entire judiciary" because sitting judges could make invalid public statements "about their or others' pending cases before the JSC." Doc. 23 at 17. The Supreme Court has recognized "the State's compelling interest in preserving public confidence in the integrity of the judiciary." *Williams-Yulee*, 575 U.S. at 444. However, Rule 6 is more restrictive than necessary to serve this end because judges and attorneys are already prohibited from making untruthful statements about pending proceedings. *See, e.g.,* JSC Rule 11(A)(3), (B) (judge is subject to contempt if she makes

an "intentional misrepresentation of a material fact during any stage of a proceeding"); N.M. R. Prof'l Conduct 16-303(A)(1) (attorney shall not knowingly make false statement of fact or law to tribunal). Rule 6 is also more restrictive than necessary as applied to Plaintiff because Plaintiff has not sought to speak about other judges' pending cases.

Defendant claims that Rule 6 protects and maintains the integrity of JSC investigations. (Doc. 23 at 17.) However, the rule is more restrictive than necessary to accomplish this aim because it still applies after investigations are complete. *See generally* JSC Rule 6. And by operation of the Order, it applies to Plaintiff indefinitely. Doc. 1-2 at 1.

Defendant claims that Rule 6 allows for "confidential complaints to be exchanged during the discovery process." Doc. 23 at 17. It is not clear to the Court what is meant by this. However, if by this Defendant means that confidentiality promotes early, informal resolution of complaints, the rule is not narrowly tailored to achieve this end because it continues to apply long after, *e.g.*, the JSC's and judge's initial conference "to explore options for early disposition"; and, perhaps more importantly, the rule allows complainants and the JSC to publicly disclose confidential information at any time. JSC Rule 6(C), (F), Rule 19(A).

Defendant claims that Rule 6 "prevents trying the case in public." (Doc. 23 at 18.) However, the rule is not narrowly tailored to achieve this end because it does not prevent complainants or the JSC from trying the case in public. *See generally* JSC Rule 6.

Broadly, as applied to Plaintiff, Rule 6 and the Order are not narrowly tailored to achieve compelling state interests because they are both over- and under-inclusive. Rule 6 and the Order are over-inclusive as to time. A regulation is not narrowly tailored where it is substantially "overinclusive," *i.e.*, where "a substantial portion of the burden on speech does not serve to advance" the state's interests. *Simon & Schuster, Inc. v. Members of New York State Crime Victims*

*Bd.*, 502 U.S. 105, 122 n.* (1991). Other courts have found that, to be constitutional, confidentiality rules governing judicial disciplinary proceedings must not sweep too broadly as to time. *See, e.g., Kamasinski*, 44 F.3d at 112 (ban on disclosure of information about proceedings "is constitutional only so long as the [Judicial Review Council] acts in its investigatory capacity"); *Cox*, 49 F. Supp. 3d at 771 (ban on complainant's publication of dismissed complaint and dismissal letter "must have a temporal limitation").

Here, however, Rule 6 and the Order are not limited to the investigative phase of proceedings and restrict Plaintiff's speech indefinitely. In this regard, it is worth noting that Defendant does not appear to have prohibited any other respondent judge from speaking about formal proceedings indefinitely by way of an order of abatement.

Rule 6 and the Order are under-inclusive as to whom they restrain. "Underinclusiveness can … reveal that a law does not actually advance a compelling interest." *Williams-Yulee*, 575 U.S. at 449. "Underinclusivity creates a First Amendment concern when the State regulates one aspect of a problem while declining to regulate a different aspect of the problem that affects its stated interest *in a comparable way*." *Id.* at 451 (emphasis in original); *see also In re Vincent*, 2007-NMSC-056, ¶ 15, 172 P.3d at 609 ("[F]or a challenged provision to be narrowly tailored to serve a compelling state interest under a strict scrutiny analysis, it must not be under-inclusive."). JSC Rule 6 is under-inclusive because it permits complainants and the JSC, but not respondent judges, to publicly disclose confidential information about judicial disciplinary proceedings. In other words, the rule does not actually preserve the confidentiality of such proceedings. In summary, Rule 6 and the Order do not satisfy strict scrutiny as applied to Plaintiff in her present circumstances.

**4. Analogous Rules and Decisions from Other Jurisdictions**

Other states' practices "are not conclusive as to the constitutionality" of a particular speech restriction, but "they are probative of the weight to be assigned [the state's] asserted interests and the extent to which the prohibition in question is necessary to further them." *Butterworth*, 494 U.S. at 635. According to Plaintiff, "it appears that no other state in the union … provides an exemption to the state constitution's confidentiality mandate for those who file complaints against judges without also providing an exemption or waiver of confidentiality for judges who are the subject of those complaints." Doc. 20 at 18-19. Plaintiff further contends that "a supermajority of at least 35 states allows judges who are the subject of commission proceedings an exemption or waiver to the confidentiality rule, while nine out of the remaining fifteen states eliminate the confidentiality provision altogether once formal proceedings have been initiated." *Id.* If true, this would definitively refute Defendant's position that the speech restrictions in Rule 6 and the Order are necessary because a less restrictive or more balanced confidentiality regime would be "unworkable." Doc. 33 at 7.

The Court has been unable to identify a case on all fours with this matter, *i.e.*, in which a respondent judge challenged the constitutionality of a rule restricting the judge's speech about judicial disciplinary proceedings against her. There are cases in which a third party or a complainant challenged confidentiality provisions governing judicial disciplinary proceedings. *See, e.g., Landmark Commc'ns, Inc.*, 435 U.S. at 831-34 (newspaper publisher); *Kamasinski*, 44 F.3d at 106-09 (complainant). There are also cases in which a judge challenged restrictions on her speech about topics other than disciplinary proceedings against her. *See, e.g., Siefert*, 608 F.3d at 977. Though similar, none of these circumstances involve precisely the same state interests or means of furthering them as those at issue here.

The most analogous case identified by the Court is *Matter of Hey*, 452 S.E.2d at 24. In *Hey*, the West Virginia Supreme Court held that "[a] judge may not be disciplined consistent with the First Amendment to the United States Constitution … for his remarks during a radio interview in which he discussed his own disciplinary proceeding, criticized a member of his investigative panel, and stated his intention to take some reactive and lawful measure against the panel member." *Id.* at 33. However, *Hey* is still somewhat distinct from this case because the judge in *Hey* had been disciplined for violating ethical canons rather than confidentiality provisions governing disciplinary proceedings. *See generally id.* The *Hey* court applied a hybrid *Pickering*/strict scrutiny test, holding that "the State may accomplish its legitimate interests and restrain the public expression of its judges through narrowly tailored limitations where those interests outweigh the judges' free speech interests." *Id.* at 31. In sum, Plaintiff has made a strong showing that she is substantially likely to succeed on the merits of an as-applied First Amendment challenge to Rule 6 and the Order.

**B. Remaining Factors of Test for Preliminary Injunctions.**

As already noted*,* "[w]hen a movant establishes the first prong of a preliminary injunction based on a First Amendment claim, the remaining prongs generally also weigh in his favor." *Pryor*, 99 F.4th at 1254. Here, as discussed earlier, Plaintiff has established the first prong, *i.e.*, she has made a strong showing she is likely to succeed on the merits. As such, the remaining three prongs also weigh in her favor. As to irreparable injury, "any potential loss of First Amendment freedoms—however small— … establishes irreparable injury." *Pryor*, 99 F.4th at 1254. Regarding balance of harms, "[a] governmental interest in upholding a mandate that is likely unconstitutional does not outweigh a movant's interest in protecting his constitutional rights." *Pryor*, 99 F.4th at 1254. Rather, "[w]hen a constitutional right hangs in the balance … even a temporary loss usually trumps any harm to the defendant." *Free the Nipple-Fort Collins*, 916 F.3d at 806 (quotation marks omitted). Finally, as to public interest, "it's always in the public interest to prevent the violation of

a party's constitutional rights." *Free the Nipple-Fort Collins*, 916 F.3d at 807 (quotation marks omitted). Therefore, all four prongs weigh in Plaintiff's favor.

**C. Scope of Preliminary Injunction.**

"[R]elief [pending litigation] must be tailored so as to minimize irreparable harm to both sides and at the same time to permit a meaningful grant of whatever permanent relief may be warranted." *Community Commc'ns Co. v. City of Boulder, Colo.*, 660 F.2d 1370, 1380 (10th Cir. 1981). In its response, Defendant states: "If this Court determines that any portion of the JSC's Order of Abatement is a prior restraint, the JSC respectfully requests that the Court narrow its ruling without imposing a broad preliminary injunction that could cause irreparable harm to the integrity of New Mexico's state judiciary." Doc. 23 at 21.

For the reasons stated above, the Court finds that Plaintiff has shown that she is entitled to a preliminary injunction, but a narrower one than she has requested. On the present record, the Court finds Plaintiff is entitled to a preliminary injunction prohibiting Defendant from enforcing Rule 6 and the Order insofar as they restrain Plaintiff from engaging in truthful, accurate, core political speech about any of the disciplinary proceedings the Order abated in which the JSC had issued a notice of formal proceedings before the abatement, *i.e.*, in which the investigative phase of the proceedings had concluded.

Finally, although Plaintiff also requests an award of fees associated with the Motion, the parties cannot brief the standards applicable to the request unless and until the Court grants a preliminary injunction. *See, e.g., Kansas Jud. Watch v. Stout*, 653 F.3d 1230 (10th Cir. 2011) (describing standards applicable to request for fees in connection with the granting of a preliminary injunction). Upon entry of this Order granting the preliminary injunction, Plaintiff may submit her request for fees associated with the Motion.

## IV.
## CONCLUSION

For all of the reasons stated above, Plaintiff's Motion for Preliminary Injunction (Doc. 20) is **GRANTED.**

**IT IS SO ORDERED**.

DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE